## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  09-20852-CR-GOLD

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.**

**ULISES TALAVERA,**

**Defendant.**
_____/

### DEFENDANT ULISES TALAVERA's
### OBJECTIONS TO PRESENTENCE REPORT
### and
### REQUEST FOR ALTERNATIVE SENTENCE

Defendant **Ulises Talavera**, pursuant to *United States Sentencing Guidelines Manual* (USSG) §§ 6A1.2 & 6A1.3, *Federal Rules of Criminal Procedure*, Rules 32 (d), (e)(2) and (f), and, the Fifth and Sixth Amendments to the *United States Constitution*, respectfully files his Objections to the Presentence Investigation Report (PSR) –and, Requests an Alternative Sentence consistent with the objections and suggestions made herein.

In support and amplification whereof, Defendant **Talavera** states:

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

## I.      Introduction

1.      Pursuant to *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), the Sentencing Guidelines are now advisory only, and, the federal sentencing process now follows a three (3) step approach.  (See *Federal Rules of Criminal Procedure*, Rule 11(b)(M), amended December 1, 2007).   First, a sentencing court is to resolve any disputed guideline issues and determine the advisory guideline range.  To that end, we agree with the findings of the Probation Office.  The 'closest' applicable Chapter Two Guideline is § 2M5.2(a)(2), the Adjusted Offense Level is 14, and with a two (2) level reduction for **Talavera**'s complete and timely *acceptance of responsibility*, the total Offense Level is 12. **Talavera** is a *first time offender*, placing him in Criminal History Category I. Therefore, the *advisory* guideline range is 10 to 16 months. [1]

2.      Second, a sentencing court is to consider if there are any factors that may warrant a departure from the *advisory* guideline range.  As before *Booker*,

---

[1]      Note, however, paragraph 67 of the PSR recognizes the 'offense of conviction' is not squarely within any of the *advisory* Guidelines.  Even "[t]he Sentencing, after reviewing the instant Indictment, **was unable to recommend the most analogous guideline for the instant offense** conduct that would assist the Court with possible issues of departures and/or variances." [Emphasis supplied].  PSR, ¶ 67.

2

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

the court is to depart when warranted under the facts and circumstances of a particular case. "The application of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered." *United States v. Jordi*, 418 F. 3d 1212, 1215 (11th Cir.2005). Paragraphs 65 through 67 of the PSR fail to identify any factors that may warrant a downward departure. However, we suggest there are factors under § 5K2.0, and, ask this Court to consider them as sentencing factors under 18 USC § 3553(a).

       3.     Lastly, a sentencing court is to consider all of the sentencing factors of 18 USC § 3553(a) and impose a sentence which is reasonable –but, not greater than necessary, to achieve the sentencing objectives set forth in 18 USC § 3553(a). We offer what, we believe, are compelling reasons why this Court should indeed consider a sentence below the *advisory* guideline range.

## II.    Objections to PSR

       4.     As to **page three** of the PSR, **Talavera** has one child, not two.

       5.     We respectfully object to the information included in **paragraphs 65 through 67** of the PSR since it does not appear to serve any

3

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

purpose.  While we agree that the Sentencing Commission may not have contemplated the use of § 2M5.2 to address the instant offense, we find there does exist an analogous guideline, that being § 2M5.1.  Here, we have an offense that involved (1) the evasion of export controls; (2) financial transactions of a non-military nature, and  (3) because the transactions did not involve a "country" that supported international terrorism (see § 2M5.1(a)(1)(B)), the proper base offense level is 14, found in § 2M5.1(a)(2).  Because this is the same level 14 already found in the PSR, we ask that these paragraphs be deleted.

### III.      Request for Alternative Sentence

6.      **Ulises Talavera**  appears before this Court for sentencing after having pled guilty to Count One, subsection (b) of the Indictment, which charges a conspiracy to export from the United States to Paraguay Sony brand (consumer) electronics, in violation of 18 USC § 371.   We agree with the guideline calculations presented in the PSR.   Further, **Talavera** has not requested a downward departure under Chapter Five of the Guidelines Manual.  As such, we agree the *advisory* guideline range is 10 to 16 months, placing **Talavera** in *Zone C*

4

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD


DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

of the *Sentencing Table*.

7.    In September 2009, the United States Sentencing Commission indicated that one of its priorities would be continued study of alternatives to incarceration, including consideration of any potential changes to the zones incorporated in the *Sentencing Table* in Chapter Five. As such, the 2010 Amendments to the Sentencing Guidelines, effective November 1, 2010, have expanded *Zones B* and *C* of the *Sentencing Table*, effectively including level 11 in *Zone B* and authorizing the option of a ***non-custodial sentence***, and including level 13 (12 to 18 months) in *Zone C*.  **Talavera** is at level 12, now only one-level from *Zone B* and at the lowest level of *Zone C*.

8.    Inasmuch as **Talavera** is only one-level from *Zone B*, we submit, there is nothing to prohibit this Court from fashioning a ***non-custodial*** sentence, consistent with a *Zone B*, or even *Zone A* sentence.  That will keep **Talavera** with his wife and their child; and, allow **Ulises Talavera** to continue to provide them with financial support.  Moreover, in the end, **Ulises** has accepted his fate.  As a result of this prosecution –despite having made a life here in the United

5

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

States– he has effectively lost the thriving business he once had.  Sadly, he will eventually be removed from the United States, returned to Paraguay, and, there will have to pick up the pieces of his life to start over.  Pursuant to 18 USC § 3561, there are no factors under the statute which prohibit a ***non-custodial sentence*** and the guidelines, §§5C1.1 (d)(e) and (f) are *advisory* –as are all other guideline sections– post-*Booker*.  Indeed, in *United States v. Chettiar*, 501 F. 3d 854, 860 (8th Cir.2007), the court found "switching zones" under § 5C1.1 to achieve a non-custodial sentence is a variance.

9.      Consistent with all of the above, "the court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes of 18 USC § 3553(a).  As this Court is aware, district courts are now free from the mandatory nature of the federal Sentencing Guidelines, *United States v. Booker*, 543 U.S. 220 (2005).  Moreover, subsequent to *Booker*, *Gall v. United States*, 128 S. Ct. 586, and *Kimbrough v. United States*, 128 S. Ct. 558, both decided on December 10, 2007, and *United States. v. McBride*, 511 F. 3D 1293 (11th Cir. 2007), made clear district courts are only required to give "some weight" to the

6

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

advisory guidelines, as they are to the other 18 USC § 3553 factors –and, any attempt to give special weight to the Sentencing Guidelines is contrary to *Booker*. However, the Supreme Court has since gone further in its recent decision in *Nelson v. United States*, 129 S. Ct. 890 (2009), where the court reiterated what it said in *Rita v. United States*, 551 U.S. 338 (2007), that a sentencing court may not presume that a sentence within the applicable guideline range is reasonable but added "the Guidelines are not only *not mandatory* on sentencing courts, they are also not to be *presumed reasonable*."

10.    The United States Sentencing Commission's *Sourcebook of Federal Sentencing Statistics* (Sourcebook) FYE 2009, (www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2009/SBTOC09.htm), provides information on 81,372 cases sentenced by the district courts that year.  In the Southern District of Florida, of 2,066 cases –

a)    70% received a sentence within the *advisory* guideline range,

b)    8.2% received downward departures under § 5K1.1,

c)    another 16.5 % (more than twice the number under § 5K1.1)

7

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

received downward variances under 18 USC § 3553, and

d)      the remaining cases (1 %) received downward departures for a

variety of other reasons.

The average age of a male offender was 37.1.  **Ulises Talavera** is 47 years old and

*a first-time offender*.

11.      Specific information as to sentences outside of the *advisory*

guideline range is only available nationally and are presented in Tables 25, 25A

and 25B of the Sourcebook.  District Courts departed downward in 335 cases for

general mitigating circumstances under § 5K2.0 and in 225 cases for family ties

and responsibilities.  However, as variances under 18 USC § 3553, courts cited the

nature and circumstances of the offense –or, the history and characteristics of the

defendant, see 18 USC § 3553(a)(1), in 7,710 cases, amounting to 23.3 % of all

downward variances– and, specifically cited family ties and responsibilities in

1,063 cases.  To that end, we offer the following:

A.      **Personal and Family History:**

12.      **Ulises Talavera** is a 47 year old native of Asuncion, Paraguay,

8

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

who first came to the United States as a 17 year old exchange student.  He is the son of Edmundo Talavera and Yolanda Campos, the older brother of Jose Talavera, and the husband of Adriana Armoa and the stepfather of her son Alan. Before his arrest in the instant offense on February 18, 2010, **Ulises Talavera** had never before been in trouble with the law.

13.    **Ulises Talavera** was raised in the capital of Paraguay by his mother and father, who enjoyed a wonderful marriage until his mother died of cancer in 1988, at the age of 46.  **Ulises**' father never remarried and also died young, at age 62, in 2001.  **Ulises** will tell this Court he had a normal childhood and had great parents.  **Ulises**' father was a bookkeeper for a utility company. However, his father was involved in a terrible automobile accident which left his father partially paralyzed.  Because of his injuries **Ulises**' father never worked again after 1973.  **Ulises** was then 10 years old. **Ulises Talavera**'s mother was an elementary school teacher and after her husband's accident, she needed to find additional work and the family had to move in with **Ulises**' maternal grandmother to get by.  Economic conditions were, at best, extremely modest.  However, the

9

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

family always attended Catholic Church together on Sundays.

14.     **Ulises** attended mostly Catholic schools and, at the age of 17, he was given the opportunity to attend St. Benedict's Preparatory School in Newark, New Jersey.  **Ulises** spoke no English at the time and the American family he stayed with spoke no Spanish; but, **Ulises** learned quickly.  Once he received his High School Diploma, **Ulises** returned to Paraguay and received another diploma in December 1982.  In February 1983, **Ulises** enrolled at the Catholic University in Paraguay and studied liberal arts. Within a year, he was living in the seminary studying religion and philosophy and preparing for a life in the priesthood. However, by late 1985, with his parents very proud of him, they supported his decision that he was not meant to be a priest.

15.     To his great credit **Ulises** received a scholarship from St. Peter's College in Jersey City, New Jersey and began school there in August 1986. He lived with another American family –the family of a boy he met during his time at St. Benedict's– in nearby Bloomfield.  Tragically, during those years his mother was diagnosed with a brain tumor.  She was sick for more than a year and **Ulises**

10

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

visited her in Paraguay when he could before she died in 1988. Subsequently, **Ulises** received his undergraduate degree in accounting in May 1990 and decided to make the United States his home.

16.    Upon graduation, **Ulises** immediately received a job offer from the KPMG accounting firm in May 1990. He worked in Newark and continued to live with his friend and the friend's family in Bloomfield. However, by 1992, he was tired of the cold weather and applied for work with KPMG's Miami office. **Ulises** was hired in October 1992 and found a place to stay with friends. Carmen Reslen soon joined him in Miami, they found an apartment of their own and they were married in March 1993. **Ulises** and Carmen had met at St. Peter's and continued their relationship after school. However, she did not like living in Miami and the marriage ended in divorce in 1997.

17.    **Talavera** left KPMG in late 1994 and, by then, was looking for something different to do. He picked up some bookkeeping work here and there; but, he was also busy making purchases and arranging for the shipment of goods to people he knew in Paraguay. **Ulises** eventually saw an opportunity, not in

11

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

purchasing goods –he could no longer compete with the prices and ease of shopping on the Internet– but, in the transportation of goods to foreign countries. In February 1996, **Ulises** opened **Transamerica Express of Miami**, a freight forwarding company that arranged for the shipment of goods, mostly to Paraguay, by either air or sea.

18.    Business was good.  **Ulises** bought the home he now lives in, a modest 1,800 square foot two story home, in July 1999.  He married his wife, Adriana, on January 3, 2005; and, they continue today to enjoy a wonderful marriage.  In June 2007, **Ulises** bought an investment home in Doral.  By 2009, **Transamerica** reported more than $10 million in gross sales, almost a $700,000 gross profit, and after expenses, including salaries to both **Ulises** and his wife -- Adriana worked as a secretary and bookkeeper– the company reported taxable income of almost $ 150,000 and paid more than $ 40,000 in corporate income tax. All of these documents have been provided to the Probation Office.

B.    **Family Ties and Responsibilities:**

19.    **Ulises** and Adriana have been married now for almost six (6)

12

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

years.  They worked together at **Transamerica** and in the past few months, they have begun to get back on their feet by opening a new company in Adriana's name.  However, although they are again working together, **Ulises**' presence at this business is essential.  Adriana does not have the experience and she is not prepared to run this business, meet the family's living expenses and care for their son alone.  As mentioned above, Adriana has a 15 year old son, Alan, who attends high school.  Although Alan visits his natural father in Paraguay during the holidays and his father provides some ($ 200/ month) financial support, Adriana will tell this Court **Ulises** has played an important role in Alan's life during these years.  In addition, Mrs. Talavera will tell this Court **Ulises** is a wonderful husband and stepfather to her son and **Ulises** is desperately needed at home.

### C.     The Arrest and Aftermath:

20.     The Indictment in this case charges a conspiracy between as early as March 2007 and at least through January 2008 (see Count One, ¶ 2).  On February 18, 2010, more than two (2) years later and without notice, **Talavera** and his family were awoken at 6 AM by a half dozen federal agents.  **Ulises** was

13

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

arrested, led in handcuffs from his home, located in a small gated, middle income community and taken to a nearby federal office and interrogated.  He immediately offered his cooperation.  He was processed at the United States Marshal's Office in Miami that afternoon and remained at the Federal Detention Center until he was released on bond on March 1, 2010.

21.    Regrettably, the charges in this case drew an inordinate amount of publicity, both locally and internationally.  In **Ulises** native Paraguay, business associates stopped doing business with him.  Banks no longer accepted wire transfers meant for **Transamerica** –and, with no ability to get paid– **Transamerica** has struggled to remain in business.  Even neighbors and family friends in Asuncion now want nothing to do with **Ulises**, or, his family.

22.    Here in Miami, suppliers stopped doing business with him. **Ulises** and his family are shunned by neighbors and sadly his son's teachers and fellow students have not made it any easier for this youngster at school.  All of the banks **Talavera** did business with sent **Ulises** notices requesting he close accounts in either his name, or, the name of his companies, because they no longer want his

14

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENTENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

business.  On May 6, 2010, Capital One closed his account because of 'pending legal action.'  On June 2, 2010, Wachovia Bank closed six of **Talavera**'s accounts because he was "not compatible with what the bank could offer."  **Ulises** was given thirty (30) days to close the accounts.  Wells Fargo Bank followed with similar notices on July 8 and July 12.  Chase Bank notified **Talavera** on August 5, 2010 it was closing his account under its "right within the Card Member Agreement."  Moreover, to add insult to injury, **Ulises** incurred penalties when forced to liquidate Certificates of Deposit and Individual Retirement Accounts because no bank would accept the transfer of his money into an account bearing his own name.  **Ulises Talavera** will tell this Court he was judged and sentenced by the public in this case, months before he entered his plea in the District Court.

23.     By June 30, 2010, **Talavera** could no longer do business under either Transamerica or Bonanza and he received his last salary from the businesses on June 30, 2010.  On August 16, 2010 **Talavera** was forced to sell the Doral investment property, 11357 NW 53 Lane, because he could no longer make the payments.  He provided a total of $ 98,810 when he purchased the home, and,

15

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

made mortgage payments for two (2) years; but, only received $ 15,712 when that home was sold. All of these documents were provided the Probation Office.

## IV.   CONCLUSION

24.   **Ulises Talavera** is well aware that in fashioning a "reasonable" –but, not greater than necessary– sentence in his case, the Court must first consider the nature and circumstances of the offense, 18 USC § 3553(a)(1).  To that end, **Ulises Talavera** immediately accepted responsibility and offered his cooperation to the government.  He has signed both the Stipulated Factual Basis and Plea Agreements to resolve the criminal matters charging him and his company Transamerica.  He has admitted that, in total, he and Transamerica exported 4 shipments of Playstation 2s to Jomana in Cuidad del Este, Paraguay using falsified SED's and invoices.  The total value of the merchandise was $ 601,400 USD. However, as the shipper's agent –or, Freight Forwarder– he made a grand profit of only $ 2,847 USD.   (See Stipulated Factual Basis).  For this, **Ulises Talavera** remains profoundly remorseful.

25.   Subsequent to *Booker*, however, this Court must also consider

16

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENCENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

the history and characteristics of the defendant, 18 USC § 3553(a) (1).   To that

end, we ask this Court to consider that while **Talavera** made some terrible

mistakes during several months in 2007, a record of his life clearly indicates he has

always tried to do the right thing.  He is truly a first time offender and he wants

only to regain his good name and reputation, remain with his wife Adriana, and,

help provide for her and their son Alan. Since his arrest on February 18, 2010

**Ulises Talavera** has abided by all of the conditions of his bond.  He has agreed to

a $ 100,000 forfeiture (see Plea Agreement reached with Transamerica Express of

Miami, ¶ 13(b)), which far exceeds any profit made, and he has paid the special

assessments in full for both he and the corporation.

26.    **Ulises Talavera** and Counsel thank this Court for considering

these 'objections' and observations addressed to the PSR, and, our request for an

Alternative Sentence.  Counsel will have further and additional remarks to make at

the time of sentencing.

LAW OFFICES SANDS & MOSKOWITZ, P.A. SUITE 2600 ONE BISCAYNE TOWER TWO SOUTH BISCAYNE BOULEVARD MIAMI, FLORIDA 33131 • TEL. (305) 285-1500

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE


Dated: December 29, 2010                    Respectfully submitted,
        Miami, Florida

                                            **LEONARD A. SANDS**, Esquire
                                            (Fla. No. 0257583)
                                            leonardsands@att.net
                                            **SANDS & MOSKOWITZ, P.A**.
                                            2600 One Biscayne Tower
                                            2 South Biscayne Boulevard
                                            Miami, Florida  33131
                                            Tel: (305) 285-1500/Fax: (305) 285-0699
                                                    Counsel for **ULISES TALAVERA**

                                            / s / Leonard A. Sands
                                            _____
                                            **LEONARD A. SANDS**, Esquire



                        **CERTIFICATE OF SERVICE**


        **I HEREBY CERTIFY** that a true and correct copy of the foregoing

was served upon all parties and counsel of record via CM/ECF, on this 29th day of

December, 2010.

                                            / s / Leonard A. Sands
                                            _____
                                            **LEONARD A. SANDS**, Esquire

LAW OFFICES SANDS & MOSKOWITZ, P.A. SUITE 2600 ONE BISCAYNE TOWER TWO SOUTH BISCAYNE BOULEVARD MIAMI, FLORIDA 33131 • TEL. (305) 285-1500

UNITED STATES v. ULISES TALAVERA
CASE NO. 09-20852-CR-GOLD

DEFENDANT TALAVERA's OBJECTIONS to PRESENCENCE REPORT
and
REQUEST for ALTERNATIVE SENTENCE

# SERVICE LIST

## CASE NO: 09-20852-CR-ASG

Hon. **Allyson Fritz**
Assistant United States Attorney
99 N.E. 4th Street
Miami, Florida 33132
Tel.:(305)961-9287
Fax:(305)536-7599
E-mail:  allyson.fritz@usdoj.gov

**Silvia B. Piñera-Vázquez**, Esquire
**Silvia B. Piñera-Vázquez, P.A.**
1900 S.W. 3rd Avenue
Miami, Florida 33129
Attorney for **Emilio J. Gonzalez-Neira**
E-mail:  spinera@aol.com

**Michael Ross Tein**, Esquire
3059 Grand Avenue, Suite 340
Coconut Grove, Florida 33133
Attorney for **Khaled T. Safadi**
**& Cedar Distributors, Inc.**
E-mail:  tein@lewistein.com

**David O. Markus**, Esquire
**David Oscar Markus, PLLC**
169 E. Flagler Street, Suite 1200
Miami, Florida 33131
Attorney for **Jumbo Cargo, Inc.**
E-mail:  dmarkus@markuslaw.com

LAW OFFICES SANDS & MOSKOWITZ, P.A. SUITE 2600 ONE BISCAYNE TOWER TWO SOUTH BISCAYNE BOULEVARD MIAMI, FLORIDA 33131 • TEL. (305) 285-1500